## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**OUTDOOR SPORTSMAN GROUP, LLC**                                    **PLAINTIFF**

**v.**                          **CASE NO. 4:08-CV-00621 BSM**

**EST, LLC, SUCCESSOR IN INTEREST TO**
**ENVIRONMENTAL SERVICE TECHNOLOGY, LLC**                **DEFENDANT**

### ORDER

Defendant EST, LLC ("EST") moves for summary judgment [Doc. Nos. 64, 85], and plaintiff Outdoor Sportsman Group, LLC ("OSG") objects [Doc. Nos. 69, 94]. OSG also moves for summary judgment [Doc. Nos. 89, 103], and EST objects [Doc. Nos. 97, 104]. Further, EST moves to admit all of its statements of fact not controverted or denied by OSG [Doc. No. 76]. For the reasons set forth below, EST's motion for summary judgment is denied, OSG's motion for summary judgment is denied, and EST's motion to admit its statement of facts is denied.

### I. FACTUAL BACKGROUND

The following facts are undisputed unless indicated otherwise. EST is a Delaware limited liability company based in Denver, Lincoln County, North Carolina and is managed by Robert Hulslander. Affidavit of Robert Hulslander, attached as Exhibit 1 to Defendant's motion for summary judgment ("Deft.'s mot."), ¶¶ 1-2. On December 29, 2006, EST purchased the formula for a deer attractant, which it eventually named "C'Mere Deer," from Bob Smith, the sole stock owner of Working Chemical Solutions, Inc. ("WCS"). Hulslander Aff. ¶ 4.

The C'Mere Deer formula purchase agreement contained a noncompete clause that states:

> 2.05. Agreement Not To Compete Or Disclose Formula or Confidential Information. Upon execution of this Agreement, WCS and SMITH agree not to compete by developing, marketing, selling, or distributing any Wild Game Attractant as defined hereinabove anywhere in the World. WCS and SMITH agree to maintain the Formula and Confidential information in confidence and not to disclose the Formula or Confidential Information to any person. In the event that WCS and/or SMITH breaches this provision, EST shall be entitled to liquidated damages in the amount of [marked out].

Sale and Purchase Agreement and Guaranty Release attached as Exhibit A, PRADCO 00007, to Pltf.'s resp. An arbitrator in North Carolina, however, has since found the clause invalid and unenforceable under North Carolina law. Email order attached at Exhibit 1 to Plaintiff's addendum to summary judgment motion ("Pltf.'s Add.") [Doc. No. 103].

EST markets and sells wild game attractants in direct competition with Plastic Research and Development Corporation ("PRADCO"). Hulslander Aff. ¶ 2. On August 30, 2007, PRADCO entered into two contracts [also referred to as "letters of understanding" in some of the filings] with David Bean. Affidavit of David Bean, attached as Exhibit C to Plaintiff's response to defendant's motion for summary judgment ("Pltf.'s resp."), ¶ 8. Bean is the managing member and founder of OSG, a company that develops and manufactures hunting and fishing products in Maumelle, Arkansas. Bean Aff. ¶ 3. Under the contracts, Bean was to provide, among other products, a deer attractant named "Urge," to PRADCO to market and sell. Bean Aff. ¶ 8.

Bean and Smith both maintain that, sometime in 2006, Bean asked for Smith's help

in developing a deer attractant that OSG could sell to PRADCO. Bean Aff. ¶ 5; Smith Aff. ¶ 11. Bean states that Smith never shared the C'Mere Deer formula with him. Bean Aff. ¶ 6. Smith also maintains that he has never disclosed the formula to anyone since selling it to EST in December 2006. Smith Aff. ¶ 7. Smith also maintains that the attractant he helped Bean develop, which was later marketed as Urge by PRADCO, is chemically distinguishable from EST's C'Mere Deer. Smith Aff. ¶ 12. With at least some assistance from Smith, Bean developed the formula for Urge and sold it to PRADCO in 2007. Smith Aff. ¶ 24.

On January 10, 2008, Hulslander and two other EST members, Hank Parker and Ivan Hawthorne, attended the Archery Trade Association trade show in Indianapolis, Indiana. Hulslander Aff. ¶ 8; Affidavit of Hank Parker, attached as Exhibit 2 to Deft.'s mot., ¶ 4; Affidavit of Ivan Hawthorne, attached as Exhibit 3 to Deft.'s mot., ¶ 4. There, they observed PRADCO's Urge display and recognized that its packaging and presentation was similar to that of C'Mere Deer. Hulslander Aff. ¶ 10. The parties agree that the EST representatives then asked the PRADCO representative, identified by OSG as Steve Lambeth, about how Urge was produced. Pltf.'s stmt. of facts, ¶ 9. The parties also agree that after it was revealed that Smith had helped produce Urge, the EST representatives told Lambeth that Smith was bound by a noncompete agreement with EST, so he could not sell or distribute any other deer attractants. *Id.*; Hulslander Aff. ¶¶ 18, 19. OSG maintains the EST representatives also told Lambeth that PRADCO was infringing on EST's contract with Smith if it sold products developed by Smith. Pltf.'s stmt. of facts, ¶ 10. Lambeth testifies in his deposition that at that

time, he felt that Hawthorne and Parker implied that EST might bring suit, although it is unclear against whom. Deposition of Steve Lambeth, attached as Exhibit 1 to Plaintiff's motion for summary judgment ("Pltf.'s mot."), 26.

About a week later, PRADCO employee John Woller reported in an e-mail that EST's Parker called him on January 16, 2008, and stated that PRADCO's use of Smith's Urge formula made PRADCO a part of a "conspiracy." Email attached as PRADCO-00021 to Exhibit A of Pltf.'s resp. PRADCO vice president and chief financial officer Richard Bozzelli reported in another e-mail that EST's Hulslander called him on January 17, 2008, to tell him that EST had "locked up" Smith in a noncompete agreement and that he wanted to speak with someone in PRADCO's legal department. *Id.* Hulslander also wrote a letter dated January 17, 2008, to Bozzelli to confirm EST's contract with Smith. Letter attached as Exhibit B to Hulslander Aff. The letter promised that EST's attorneys would forward a copy of EST's C'Mere Deer purchase agreement with Smith. *Id.* Bozzelli later told Smith that Hulslander had made "overtures of a potential suit" due to an alleged violation of Smith's contract with EST. Email attached as PRADCO-00027 to Exhibit A of Pltf.'s resp. In a January 23, 2008, email to Bozzelli, Woller stated that unless the C'Mere Deer purchase agreement between EST and Smith was fake, "we're done." Email attached as PRADCO-00030 to Exhibit A of Pltf.'s resp.

Bozzelli wrote to Bean on January 30, 2008, to terminate PRADCO's letters of understanding with OSG. Termination letter attached as PRADCO-00017-19 to Exhibit A

of Pltf.'s resp. Bozelli only stated that PRADCO had "concluded that it is in our best interest" to terminate its relationship with OSG. *Id.*

OSG filed its complaint against EST on July 22, 2008, and amended it on December 30, 2009. OSG claims EST intentionally and improperly interfered with its contractual relationship and business expectancy with PRADCO, causing PRADCO to terminate its letters of understanding with OSG. OSG also claims EST made defamatory remarks about OSG, committing an unfair and deceptive trade practice and engaging in an unfair method of competition. OSG seeks a judgment against EST for actual damages, punitive damages, and costs and fees.

EST now moves for summary judgment on all of OSG's claims, asserting that OSG cannot establish that EST knew about OSG's contractual or business relationship with PRADCO, nor can OSG prove that EST caused PRADCO to terminate its relationship with EST. OSG also moves for summary judgment, claiming the noncompete clause in EST's contract with Smith and WCS is invalid and unenforceable under North Carolina law, and thus cannot be cited as justification for EST's actions.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exist and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v.*

*ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The plain language of Rule 56© mandates the entry of summary judgment against a nonmoving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). It does not weigh the evidence or make credibility determinations. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A.    Conflict of Laws

The parties agree that because this case is brought under diversity jurisdiction, Arkansas's choice-of-law rules apply. *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 423 (E.D. Ark. 2010). When deciding which state's law should apply, Arkansas considers five factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001).

EST maintains that either Indiana or North Carolina law should apply to OSG's interference, defamation, and unfair and deceptive trade practices claims. EST argues that because it held no expectation of being hailed into an Arkansas court, it would be unfair to apply Arkansas law under the predictability and interstate order factors. Additionally, EST asserts that the third factor, simplification of the judicial task, similarly favors the application of Indiana or North Carolina law because it believes that these states' laws will be outcome-determinative. Specifically, it maintains OSG cannot disprove EST acted with justification, a unique additional element under these states' laws for OSG's interference claims. Furthermore, EST indirectly addresses the forum's governmental interest and better-rule-of-law factors by noting Arkansas's traditional preference for the application of *lex loci delicti* (the doctrine favoring the law of the state where the wrong is alleged to have taken place) in tort cases. EST's argument seems to be that if certain conduct at the trade show in Indianapolis gave rise to a tort action, the law of Indiana should govern that action.

OSG, on the other hand, argues that either Arkansas or North Carolina law should control. To begin, OSG maintains EST knew that its comments were directed at an Arkansas entity and the party affected by its conduct was an Arkansas entity. OSG also notes that EST knew Urge was developed in Arkansas with the help of Bob Smith, an Arkansas resident. OSG also argues that Arkansas's contacts with the case are sufficient to apply Arkansas law under the second factor, the maintenance of interstate and international order. OSG maintains EST's "later contact," made after the trade show in Indiana, was the ultimate cause of

PRADCO's termination of its contract with OSG. Additionally, OSG maintains that Arkansas has an interest in protecting its residents, including OSG and David Bean, from tortious and deceptive conduct, whereas Indiana and North Carolina have no interest in the tortious conduct of an out-of-state company that does not affect an in-state resident. Finally, OSG argues EST's actions were directed at an Arkansas resident and the resulting injury occurred in Arkansas.

Although this case concerns actions allegedly taken by EST in Indiana and North Carolina, the injury alleged ultimately arose in Arkansas. Therefore, Arkansas law will apply to all of OSG's claims. While competing factors might perhaps weigh in favor of the application of another state's law, citizens of Arkansas and products manufactured in Arkansas form the heart of the dispute.

B.     OSG's Tortious Interference Claims

EST's motion for summary judgment on OSG's tortious interference claims is denied because there are material issues of fact in dispute.

OSG claims EST tortiously interfered with OSG's business expectancy and contractual relationship with PRADCO. To maintain a claim for tortious interference with a contract or business expectancy in Arkansas, OSG must prove (1) it had a valid contractual relationship or business expectancy; (2) EST, the alleged interfering party, had knowledge of that relationship or expectancy; (3) EST's interference was intentional; (4) EST caused a breach or termination of the relationship or expectancy; and (5) OSG suffered damage as

a result of the loss of the relationship or expectancy. *K.C. Props of N.W. Ark., Inc. v. Lowell Investment Partners, LLC*, 280 S.W.3d 1, 11 (2008). OSG must also prove that EST's conduct was improper, considering the following factors: (1) the nature of EST's conduct; (2) EST's motive; (3) OSG's interest that EST allegedly interfered with; (4) the interests EST sought to advance; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of EST's conduct to the interference; and (7) the relationship between the parties. *Id.* at 11-12. Additionally, EST may assert the affirmative defense of privilege if it can show that it acted in good faith to protect its own present economic interest. *See* W. Page Keeton, *Prosser & Keeton on Torts* § 129, at 986 (5th ed. 1984); Arkansas Model Instruction 403.

EST argues that OSG cannot maintain either claim for three reasons: (1) EST lacked knowledge of any contract or business relationship between OSG and PRADCO; (2) OSG cannot prove EST intentionally interfered with its contract or expectancy; and (3) OSG cannot prove EST caused PRADCO to end its relationship with OSG. Additionally, EST maintains that it has conclusively established the affirmative defense of privilege.

Summary judgment on OSG's tortious interference claims is inappropriate because factual disputes remain as to whether EST had knowledge of OSG's relationship with PRADCO, whether it intentionally sought to end that relationship, whether it caused that relationship to end, and whether it acted in good faith when it sought to enforce its noncompete agreement with Smith.

*1. Knowledge*

There is a material issue of fact in dispute as to whether EST knew of OSG's relationship and expectancy with PRADCO. Although EST argues that prior to being served with OSG's complaint it was not aware of the existence of OSG, let alone any relationship OSG had with PRADCO, there is evidence that EST might have had constructive knowledge that Urge was produced by a third party for PRADCO. Thus, a reasonable jury could find that EST at least knew that some other, unidentified party, or even OSG, supplied PRADCO with Urge. Such constructive knowledge is sufficient to satisfy the knowledge requirement for tortious interference. *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657, 662 (8th Cir. 2002). Therefore, an issue of fact remains as to EST's knowledge of OSG's relationship with PRADCO.

*2. Intent*

A fact issue also remains as to whether EST intended to interfere with OSG's relationship with PRADCO. EST argues OSG cannot establish that EST intentionally interfered with OSG's contract or expectancy. EST also maintains there is no evidence that it was aware that Smith worked with OSG. OSG responds that EST continued its communications with PRADCO even after Smith notified Hulslander that a third party had produced Urge for PRADCO, and points to the testimony of a PRADCO employee who testifies that he believes EST was "bashing" PRADCO because of its relationship with OSG. Deposition of Steve Lambeth, attached as Exhibit F to Plaintiff's response to Defendant's

supplemental motion for summary judgment [Doc. No. 94] ("Pltf.'s supp. resp."), 30-31. OSG also cites Smith's deposition testimony that PRADCO's attorney, in a conversation about the noncompete clause between Smith and EST, advised him that EST had "run [his] name into the ground" at a recent trade show, in essence "butchering" Smith's reputation. Deposition of Bob Smith, attached as Exhibit H to Pltf.'s supp. resp., 123-24.

The record is unclear as to whether EST specifically intended to interfere with OSG's contract and expectancy with PRADCO. Conflicting testimony raises issues of fact to be decided by a jury, so summary judgment is inappropriate on the basis of OSG's inability to prove EST's specific intent. The fact that OSG was never specifically mentioned by PRADCO or EST does not exclude the possibility that EST intended to interfere with OSG's relationship with PRADCO.

### 3. Causation

Another fact issue remains as to whether EST's actions caused OSG to lose its business relationship and expectancy with PRADCO. EST maintains OSG has offered no proof that PRADCO's termination of its letters of understanding with OSG were caused by any action taken by EST. EST points to the termination letter sent by PRADCO's Bozelli to OSG President David Bean on January 30, 2008, which does not mention EST nor identify EST as the cause of the termination. Letter attached as Exhibit 4, OSG-000037, attached to Deft.'s mot.

OSG responds by citing Richard Bozelli's deposition testimony that in writing the

12

termination letter, he believed that ". . . if there was a potential for a dispute because of some former contract that EST and Smith had, then I don't want to be a party to it. So the best thing for me to do is terminate [PRADCO's] contracts with OSG." Deposition of Richard Bozelli, attached as Exhibit G to Pltf.'s supp. resp., 30.

This sequence of events raises the possibility that EST's communications with PRADCO caused the company to terminate its contracts with OSG; therefore, a trial on the issue of causation is warranted.

### 4. *EST's affirmative defense*

EST argues that it is entitled to summary judgment on OSG's tortious interference claims because undisputed evidence establishes its affirmative defense of privilege. Under Arkansas law, even if a plaintiff establishes a prima facie case of interference with a contractual relationship or a business expectancy, a defendant may still prevail if it can show that its conduct was justified or privileged. *See Conway Corp. v. Construction Engineers, Inc.*, 782 S.W.2d 36, 40 (Ark. 1989). To claim such a privilege, a defendant must initially identify the interest that it sought to protect. *See* Keeton, *supra*, at § 129, at 986. The defendant's own present economic interest in a prior contract with another party is such an interest. *Stebbins & Roberts, Inc. v. Halsey*, 582 S.W.2d 266, 267 (Ark. 1979). Secondly, the defendant must show that its conduct was in furtherance of that interest and pursued in good faith. *See Conway Corp.*, 782 S.W.2d at 40. At all times, the burden of establishing the defense of privilege remains with the defendant. *Halsey*, 582 S.W.2d at 267.

13

EST claims that all contact with PRADCO was in furtherance of EST's own present economic interest—its noncompete agreement with Smith—and was therefore justified as a matter of law. OSG counters that the unenforceability of the noncompete agreement under North Carolina law conclusively proves that EST's actions were unjustified. Both parties go too far.

The mere fact that the noncompete clause in Smith's contract was found to be invalid does not render EST's pursuit of its rights thereunder automatically wrongful. The proper question is whether EST acted in good faith when it sought to enforce the noncompete clause. If EST truly sought to communicate what it thought to be its legal rights, despite its ultimate misapprehension of those rights, then the affirmative defense of privilege would apply. *Id.* at 268. If, however, EST "went far beyond an academic statement" of its purported rights under the Smith contract and sought to induce PRADCO to breach its contract with OSG, then no defense of privilege is available. *Id.* Clearly these are questions of fact best left to the jury: "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in questions." *Hayes v. Advanced Towing Services, Inc.*, 40 S.W.3d 800, 805 (Ark. Ct. App. 2001) (citing Restatement (Second) of Torts § 767 cmt. j (1979)).

For all of the reasons set forth above, EST's motion for summary judgment on OSG's claims of tortious interference is denied.

14

D.    <u>Unfair and Deceptive Trade Practices Claims</u>

The Arkansas Deceptive Trade Practices Act (ADTPA) provides a private cause of action to "any person who suffers actual damage or injury as a result of an offense or violation as defined [in the Act]." Ark. Code Ann. § 4-88-113(f) (LEXIS Repl. 2001). It is not clear which of the specific provisions of the ADTPA EST is supposed to have violated. OSG, however, maintains that EST's attempt to use its noncompete agreement with Smith to discourage PRADCO from continuing to do business with OSG rises to the level of a false representation, disparagement, or an unconscionable or deceptive practice. In response, EST claims that any action taken to enforce the noncompete agreement was merely an attempt to protect its legitimately-held business interests. Thus, it appears that a genuine issue of fact remains and that summary judgment on OSG's claim of unfair and deceptive trade practices is inappropriate.

E.    <u>EST's Motion to Strike OSG's Statement of Facts</u>

Because the aforementioned fact issues remain, EST's motion to strike OSG's statement of facts is moot.

## IV. CONCLUSION

Accordingly, EST's motion for summary judgment [Doc. Nos. 64, 85] is denied, OSG's motion for summary judgment is denied [Doc. Nos. 89, 103], and EST's motion to strike [Doc. No. 76] is moot.

15

IT IS SO ORDERED this 24th day of September, 2010.

_____
UNITED STATES DISTRICT JUDGE